NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTONIO JONES, | |
| Plaintiff, | Civ. No. 18-1454 (PGS-DEA) |
| v. | |
| NJ DOC CENTRAL TRANSPORTATION, et al., | MEMORANDUM |
| Defendants. | |

**PETER G. SHERIDAN, U.S.D.J.**

This matter comes before the Court on a motion to dismiss filed by defendants Drs. James K. Liu and Abu Ahsan. (ECF No. 17). Plaintiff opposes the motion. (ECF No. 21). For the following reasons, the motion is granted in part. Plaintiff's medical malpractice and negligence claims against Drs. Liu and Ahsan are dismissed with prejudice. Plaintiff shall submit an amended complaint clarifying his Eighth Amendment claim against moving defendants within 14 days.

## I.

Plaintiff is currently a prisoner at New Jersey State Prison ("NJSP") in Trenton, New Jersey. He filed a complaint in February 2018 alleging defendants misdiagnosed his injuries and neglected to provide proper care for injuries sustained in a fall from a New Jersey Department of Corrections ("NJDOC") Central Transportation vehicle. The complaint also alleges defendants failed to provide proper care for a brain tumor.

The complaint set forth Plaintiff's medical history beginning in October 2013 with an arm injury at the Ocean County Jail. (ECF No. 1 at 11). Plaintiff received an MRI on March 11, 2014 that showed a pituitary mass. (*Id.* at 11-12). A doctor reviewing the results "highly recommended" that Plaintiff receive a contrast MRI of the brain and pituitary gland. (*Id.* at 12). On or about May 6, 2014, Plaintiff was diagnosed with pituitary macroadenoma. (*Id.*). Plaintiff was complaining about changes to his vision, "and was informed that the cause of impairment was due to the hemianopsia implying pressure on the optic chasm, normal optic discs with spontaneous venous pulsations . . . ." (*Id.*) (emphasis in original). Plaintiff had a follow-up appointment July 5, 2014 at NJSP to discuss the MRI of his pituitary gland, a little over three months since the recommendation for the MRI was made and two months since the diagnosis. (*Id.*).

Plaintiff had another MRI on July 16, 2014, this one for his shoulder that was injured in a December 2013 car accident. (*Id.* at 11-12). According to the complaint, Dr. Ahmar Shakir, D.O., noted that Plaintiff had "significant difficulties with his neck as well as his head, and was recently diagnosed with an optic nerve tumor and cervical sprain/strain . . . ." (*Id.* at 12-13) (emphasis in original). In September 2014, Plaintiff complained of severe headaches as well as numbness/stiffness/burning in his left shoulder and neck area. (*Id.* at 13). NJSP Nurse Practitioner Alejandrina Sumicad informed Plaintiff that he needed a referral for treatment as well as a "complete endocrine evaluation and measurement of all serum hormones including proclactin testosterone, (ACTH), [and] cortisone . . . ." (*Id.*). He was referred to University Hospital for a surgical opinion by Dr. Anthony A. Chiurco. (*Id.*).

Plaintiff saw defendant Dr. Abu Ahsan on September 30, 2014 in the NJSP medical department. (*Id.*). Dr. Liu saw Plaintiff at University Hospital Plaintiff on February 11, 2015 for

2

an evaluation of the pituitary adenoma with optic nerve compression. (*Id.*). At that time, Dr. Liu informed Plaintiff of a "large pituitary adenoma with optic nerve compression" and requested that he return on March 11, 2015. (*Id.* at 14). Plaintiff saw Dr. Ahsan again on February 12, 2015 for an "MRI with and without contrast, pituitary protocol with stealth" consultation report. (*Id.* at 13-14). Plaintiff returned to Dr. Ahsan on February 25 and was diagnosed with a pituitary macroadenoma. (*Id.* at 14). Dr. Ahsan could not find the MRI but stated that the tumor was 1cm. (*Id.*). Plaintiff alleges this tumor was discovered accidentally because he was having MRIs done as part of his treatment for his prior car accident. (*Id.*). An additional MRI was ordered. (*Id.*). Plaintiff was warned that he was in danger of developing hypoglycemia and needed to take precautions. (*Id.*).

Plaintiff had an MRI of his brain taken on March 5, 2015 and was again diagnosed with pituitary adenoma. (*Id.*). Dr. Ahsan recommended physical therapy on March 11 for Plaintiff's shoulder pain,[1] but does not seem to have taken any action concerning the adenoma. (*Id.*). Plaintiff alleged Dr. Ahsan told him on December 3, 2015 that nothing could done for the tumor until the orthopedic work on Plaintiff's shoulder was finished. (*Id.* at 15). He alleged that the tumor had not been removed as of the date the complaint was filed, February 6, 2018. (*Id.* at 16).[2]

On March 9, 2016, Plaintiff was returning from a trip when he fell from a NJDOC transportation van. (*Id.* at 8). He had an orthopedic consultation the next day at which time he received a diagnosis of rotator cuff tendinitis. (*Id.* at 9). Anti-inflammatory medication was prescribed, physical therapy was started, and a corticosteroid injection was recommended. (*Id.*).

---

[1] Plaintiff alleges shoulder, neck, and back pain throughout his complaint.
[2] According to Plaintiff's opposition papers, the tumor was removed late 2018. (ECF No. 21 at 8).

Plaintiff had an MRI of his shoulder on May 16, 2016 at St. Francis Hospital. *(Id.)*. He was diagnosed with a rotator cuff tear and was advised surgery was recommended. (*Id.*). He did not have surgery until November 16, 2016. (*Id.*). He alleges that he experienced significant pain both before and after surgery, but no one was taking him seriously because of his unidentified "mental health condition." (*Id.* at 10).

Plaintiff filed this complaint pro se on February 6, 2018. (ECF No. 1). The Court screened the complaint and dismissed the claims against Ihuoma Nwachukwu and the NJDOC. Plaintiff's Eighth Amendment denial of medical care and state medical negligence claims against Dr. James K. Liu, Dr. Abu Ahsan, and the NJSP Medical Department were permitted to proceed. The Court appointed counsel. (ECF No. 10). Drs. Liu and Ahsan subsequently filed this motion to dismiss the complaint. (ECF No. 17). The Court conducted oral argument on May 1, 2019.

## II.

When considering a motion to dismiss a complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, the Court must "tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there

4

are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (internal citations and quotation marks omitted). "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." *Id.* at 790.

### III.

#### A. State Tort Claims

Defendants argue the Court lacks jurisdiction over Plaintiff's state tort claims for negligence and medical malpractice because he did not comply with New Jersey law for filing tort claims against public employees. The Court agrees and dismisses the state tort claims against Drs. Liu and Ahsan with prejudice.

Under New Jersey law, "[n]o action shall be brought against a public entity or public employee under [the New Jersey Tort Claims Act ("NJTCA")] unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. § 59:8–3. The NJTCA requires plaintiffs to file a notice of tort claim with the public entity being sued within 90 days of the incident and to wait for a response before filing a lawsuit. N.J.S.A. § 59:8–8(a). The notice requirement is "a jurisdictional precondition to filing suit," *Ptaszynski v. Uwaneme*, 853 A.2d 288, 294 (N.J. Super. Ct. App. Div. 2004) (internal quotation marks omitted), and suits that do not comply with the notice provision are "forever barred from recovering against a public entity or public employee." N.J.S.A. § 59:8–8. *See also Guzman v. City of Perth Amboy*, 518 A.2d 758, 760 (N.J. Super. Ct. App. Div. 1986) ("Timely statutory notice is a prerequisite."). However, a plaintiff may be permitted to file a late notice of tort claim by making a motion to the court that is "supported by affidavits based upon personal knowledge

5

of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file" a timely notice of tort claim within a year of the incident. N.J.S.A. § 59:8–9.

Plaintiff argued in his papers that his state tort claims should not be dismissed because he filed a notice of claim form with the New Jersey Department of Treasury on June 16, 2016,[3] invoking the one-year exception. (ECF No. 21 at 15). At oral argument, he clarified that the notice of tort claim filed with the Treasury did not name Drs. Liu and Ahsan as potential tortfeasors. Plaintiff argued that notice filed with the Treasury was sufficient to put the state on notice that there were other tortfeasors potentially liable to Plaintiff and to trigger an investigation into Plaintiff's claims.

Plaintiff has not complied with the NJTCA. There is no evidence in the record that Plaintiff received a court's permission to file a late notice of claim before he filed it with the Treasury. "[T]he filing of 'a late notice of claim with an entity without leave of court is a nullity and does not constitute substantial compliance with the terms of [N.J.S.A. 59:8–9].'" *Rogers v. Cape May Cty. Office of Pub. Def.*, 31 A.3d 934, 941 (N.J. 2011) (quoting Margolis & Novack, *Claims Against Public Entities*, comment on N.J.S.A. 59:8–9 (2011)) (alteration in original). *Accord Brandt v. Thuring*, No. 16-8792, 2019 WL 1418125, at *8 (D.N.J. Mar. 29, 2019) (quoting *Rogers*). "After the one-year limitation has passed, 'the court is without authority to relieve a plaintiff from his failure to have filed a notice of claim, and a consequent action at law must fail.'" *Pilonero v. Twp. of Old Bridge*, 566 A.2d 546, 548 (N.J. Super. Ct. App. Div. 1989) (quoting *Speer v. Armstrong*, 402 A.2d 963, 965 (N.J. Super. Ct. App. Div. 1979)). Even giving Plaintiff the benefit of the latest possible claim accrual date for argument's sake only, June 2016 when he filed his claim with the Treasury and at which time Plaintiff knew he had a tort claim

---

[3] A copy of the notice was not provided to the Court.

against public employees, he did not request permission to file a late claim against Drs. Liu and Ahsan within that one-year period, *i.e.*, by June 26, 2017.

The Court also concludes there is not a basis to infer notice to Drs. Liu and Ahsan based on the June 2016 filing. Plaintiff conceded the notice did not name either defendant, and Plaintiff did not file his notice of claim with the correct public entity. "A claim for damage or injury arising under [the NJTCA] against the State shall be filed either with (1) the Attorney General or (2) the department or agency involved in the alleged wrongful act or omission." N.J.S.A. § 59:8-7. Drs. Liu and Ahsan are employed by Rutgers, not the Treasury Department. The NJTCA only provides for constructive notice of employees when their employers are served. *See* N.J.S.A. § 59:8-10(c) ("Service of the notice required by this chapter upon the public entity shall constitute constructive service upon any employee of that entity."). Plaintiff did not properly serve Drs. Liu and Ahsan with notice.

The state law claims against Drs. Liu and Ahsan are dismissed with prejudice.

## B. Eighth Amendment Claims

Defendants argue that Plaintiff has failed to sufficiently allege an Eighth Amendment claim against them for inadequate medical care, alleging that he has failed to sufficiently allege deliberate indifference. They argue that he has, at most, stated claims for negligence or medical malpractice.

To state a violation of the Eighth Amendment right to adequate medical care, a convicted and sentenced inmate must plead facts indicating: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). "Deliberate indifference is a 'subjective standard of liability consistent with

7

recklessness as that term is defined in criminal law.'" *Natale*, 318 F.3d at 582 (quoting *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000) (en banc)). The Third Circuit has found deliberate indifference "'where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

The Third Circuit has distinguished between "cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment." *U.S. ex rel. Walker v. Fayette Cty., Pa.*, 599 F.2d 573, 576 n.2 (3d Cir. 1979); *accord Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017). Plaintiff's complaint alleges Drs. Liu and Ahsan "misdiagnosed" his brain tumor, which in turn denied him proper treatment. Defendants argue they cannot have misdiagnosed Plaintiff's pituitary macroadenoma because the pituitary macroadenoma was diagnosed by a different physician prior to Plaintiff's first consultation with Dr. Ahsan. (ECF No. 17-6 at 9). Plaintiff's position in his papers and at oral argument was the Defendants failed to treat his tumor properly and that the complaint did not mean "misdiagnosed" in the literal sense. (ECF No. 21 at 13). "[I]t is clear that Jones intended by 'diagnose' to mean a course of treatment – i.e., the disregard for the need to prescribe a proper treatment plan." (*Id.*). Plaintiff's complaint was filed pro se prior to the appointment of counsel and therefore must be liberally construed by the Court. With this in mind, the Court accepts that Plaintiff intended to allege the second type of a deliberate indifference claim. *Pearson*, 850 F.3d at 535.

"[M]ere allegations of malpractice do not raise issues of constitutional import. Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (internal citations omitted). Therefore, "when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." *Pearson*, 850 F.3d at 535. Assuming all the facts in the complaint are true and giving Plaintiff the benefit of all reasonable inferences, as the Court must at this stage, there are enough facts to infer a cause of action based on the delay and inadequacy of treatment of Plaintiff's brain tumor only. According to the complaint, Defendants were aware of Plaintiff's tumor years before any surgical action was taken and despite Plaintiff's constant headaches. The complaint states Dr. Ahsan elected to treat Plaintiff's orthopedic concerns before taking any action on the tumor, but even after the shoulder surgery was completed in November 2015 Plaintiff did not receive surgery for his tumor until late 2018. (ECF No. 1 at 15-16; ECF No. 21 at 8). There is at least a plausible inference that this "dismissive attitude towards [Plaintiff's] injury and pain would have 'so deviated from professional standards of care that it amounted to deliberate indifference.' This conduct is what particularly 'separates this complaint from ordinary allegations of medical malpractice,' which is insufficient to support a finding of a constitutional violation." *Gaines v. Busnardo*, 735 F. App'x 799, 803 (3d Cir. 2018) (quoting *Pearson*, 850 F.3d at 541).

The Court concludes that it and the parties would benefit from the submission of an amended complaint clarifying that Plaintiff's claims are based on a failure "to prescribe a proper treatment plan" and not on the "misdiagnosis" by Drs. Ahsan and Liu. The Eighth Amendment claim may only proceed as to the care related to Plaintiff's brain tumor as there are insufficient

facts in the complaint to sustain an Eighth Amendment claim as to the treatment for Plaintiff's other injuries.

## IV.

For the reasons stated above, the motion to dismiss is granted in part. Counsel for Plaintiff shall submit an amended complaint within 14 days of this Memorandum and Order.

An appropriate order follows.

DATED: May 14½, 2019

PETER G. SHERIDAN
United States District Judge