Ricardo Solano Jr.
FRIEDMAN KAPLAN SEILER
  & ADELMAN LLP
One Gateway Center, 25th Floor
Newark, NJ 07102-5311
(973) 877-6400
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANTONIO JONES, | |
| Plaintiffs, | Civil Action No. 18-1454 (PGS-DEA) |
| v. | |
| NJ DOC CENTRAL TRANSPORTATION, et al., | **AMENDED COMPLAINT AND JURY DEMAND** |
| Defendant. | |

Plaintiff Antonio Jones ("Jones) sues defendants New Jersey Department of Corrections ("DOC"); Marcus O. Hicks, Acting Commissioner of DOC ("Hicks"); Ihuoma Nwachukwu, M.D. ("Dr. Nwachukwu"), Medical Director at New Jersey State Prison ("NJSP"); Abu Ahsan, M.D. ("Dr. Ahsan"), Site Medical Director at NJSP; James K. Liu, M.D. ("Dr. Liu"), medical care provider to DOC inmates assigned to NJSP; and John Does 1 through 10 (collectively, "Defendants"), and alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action under by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. Specifically,

Defendants have violated the Eighth Amendment's prohibition against cruel and unusual punishment by denying and delaying for non-medical reasons Jones's reasonable requests for medical treatment; refusing to provide Jones with necessary medical care despite being having knowledge of his need for such medical care; and acting with deliberate indifference to the medical needs of Jones over the course of several years.

2.      This action also seeks to address the DOC's and DOC Commissioner Hick's negligence in failing to provide appropriate supervision, guidelines, oversight, and conditions for the transportation of its inmates also caused medical injuries to Jones, for which he continues to suffer to this day.

## THE PARTIES

3.      Plaintiff Jones is, and was at all times relevant to the Complaint, a resident of the State of New Jersey and a prisoner of the State of New Jersey in the custody of DOC. He is currently confined at NJSP, 600 Cass Street, Trenton, New Jersey.

4.      Defendant DOC is the department of the State of New Jersey responsible for ensuring that all individuals committed to the state correctional institutions are confined with the level of custody necessary to protect the public and that they are provided with the care, discipline, training, and treatment needed to prepare them for reintegration into the community.

5.      Defendant Hicks is the Acting Commissioner of the DOC. Commissioner Hicks is named in this lawsuit individually and in his official capacity.

6.      Defendant Dr. Nwachukwu is presently working as a physician in the medical unit of the NJSP. Upon information and belief, Dr. Nwachukwu's duties include some supervision of healthcare personnel and services at the NJSP. Dr. Nwachukwu is a state actor acting under color of state law. Upon information and belief, Dr. Nwachukwu is employed at the NJSP as a physician

responsible for diagnosing and treating prisoners in accordance with community standards of care. She is named in this lawsuit individually and in her official capacity.

7. Defendant Dr. Ahsan is a physician employed by Rutgers University as the Site Medical Director at NJSP. In his capacity as Site Medical Director, he provides primary care services to the prison population at NJSP, including Jones. For purposes of his conduct that is the subject of this action, Dr. Ahsan is a state actor acting under color of state law. Dr. Ahsan is named in this lawsuit individually and in his official capacity.

8. Defendant Dr. Liu is a physician employed by Rutgers University as an attending neurosurgeon and associate professor. In his capacity as attending neurosurgeon, he provides medical care to patients at Rutgers University Medical School's Ambulatory Care Center; this includes, inmates at NJSP, including Jones. For purposes of his conduct that is the subject of this action, Dr. Ahsan is a state actor acting under color of state law. Dr. Liu is named in this lawsuit individually and in his official capacity.

9. Defendants John Does 1 through 5 are additional medical personnel employed by the State of New Jersey who provided, or assisted in providing, medical care to Jones for the injuries that are the subject of this Complaint.

10. Defendants John Does 6 through 10 are the DOC employees who failed to take appropriate care in transporting Jones off of the van.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution of the United States of America. This Court also has jurisdiction over the state law claims under 28 U.S.C. § 1367 because it is so

related to the federal claims in the action that they form part of the same case or controversy under Article III of the United States Constitution.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action, and the injury caused by Defendants' actions, occurred in New Jersey. Upon information and belief, venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because all of the defendants reside in the State of New Jersey.

13. Personal jurisdiction over Defendants is proper because each Defendant is a resident of the State of New Jersey or has systematic and continuous contacts with the State of New Jersey and this action directly arises from those contacts, or both.

## FACTUAL BACKGROUND

### A. Neglect of Plaintiff's Pituitary Gland Tumor

14. On December 19, 2013, Jones was involved in an automobile accident that resulted in certain injuries to his shoulder as well as his neck and back that are discussed further in Section B, *infra*. A subsequent MRI taken on January 27, 2014, revealed a partial tearing of the supraspinatus tendon.[1]

15. Over the next several months, Jones continued to experience pain in his neck and shoulder and was seen by Dr. David Dickson on March 10, 2014. The next day, an MRI was taken that showed "bulging disc at C5-C6 and C6-C7 underlying spinal stenosis cord compression." (Id. at 11-12).

---

[1] Jones had previously injured his left arm on October 17, 2013, while detained at the Ocean County Jail when a steel door closed on his left arm. An x-ray was taken to determine the extent of the injuries and pain medication was prescribed.

4

16. The MRI of March 10, 2014, also revealed a pituitary mass. As a result, Dr. Nazir El Abidin "highly recommended" a "contrast MRI of the brain and pituitary gland."

17. On May 6, 2014, Jones was transported to the Ocean Eye Institute to discuss his recent diagnosis of pituitary macroadenoma. During this consult, Jones complained of problems with his visions. He was told that the cause of his vision impairment was due to hemianopsia causing pressure on the optic chasm and spontaneous venous pulsations. He was referred for a neurosurgical consult.

18. On July 5, 2014, Jones was seen by Channel Howell, RN, who works for Defendant New Jersey State Prison Medical Department ("NJSP") for a follow-up visit related to the reported mass on the pituitary gland. No significant action is taken or treatment recommended regarding the mass.

19. The next month, on August 15, 2014, Jones is again seen by a member of the NJSP medical staff – Dr. Ahmar Shakir D.O. – regarding "rotator cuff tendinitis of [Jones's] left shoulder." In his patient notes, Dr. Shakir also noted that Jones "was having significant difficulties with his neck as well as his head, and he was recently diagnosed with an optic nerve tumor and cervical sprain/strain." Jones was referred to a neurosurgeon with these injuries.

20. One month later, on September 29, 2014, Jones is seen by Alejandra Sumicad, NP, at NJSP. She referred Jones for "a complete endocrine evaluation and measurement of all serum hormones."

21. On September 30, 2014, Jones is seen by Defendant Dr. Ahsan for the first time. There is no follow-up until February 12, 2015, when Dr. Ahsan again evaluates Jones and recommended the following: "MRI brain with and without contrast, pituitary protocol with stealth."

22. The evaluation recommended by Dr. Ahsan was performed by Defendant Dr. Liu. Dr. Liu reported to Jones that he suffered from "large pituitary adenoma with optic nerve compression" and asked him to return on March 11, 2015. This follow-up consultation, prescribed by Dr. Liu, does not take place.

23. At least as early as March 2015, Dr. Liu knows that Jones has a tumor on his pituitary tumor. Despite such knowledge, Dr. Liu never takes any action to treat Jones' condition. There is no medical reason for Dr. Liu's failure to do so.

24. On February 25, 2015, Jones is again seen by Dr. Ahsan at NJSP, who also informed Jones that he "was diagnosed to have pituitary marcoadenoma," and stated that the "tumor was 1cm," although Dr. Ahsan could not locate the MRI. Nonetheless, Dr. Ahsan – along with Dr. Liu – are clearly aware of the tumor on Jones's pituitary gland.

25. On November 23, 2015, Jones underwent surgery to repair the rotator cuff of his left shoulder. Dr. Ahsan followed up with Jones on December 3, 2015, and informed Jones for the first time – over eight months after the initial diagnosis – that the follow-up work on the pituitary tumor "was on hold until completion of orthopedic procedures" related to Jones's shoulder.

26. Despite being aware of the pituitary tumor since at least as early as September 2014, over one year later, Dr. Ahsan still continued to ignore this medical condition and he continued to delay proper medical treatment for it. There is no valid medical reason for his failure to delay and deny valid medical treatment to Jones for years.

27. Jones's tumor was then not removed until August 2018 – approximately 6 months *after* he initially filed this Complaint and *more than four years* after Defendants first became aware of it.

28.     During the several years that Jones was denied proper medical treatment for his pituitary tumor – *i.e.*, during the years in which his eye surgery was delayed for no valid medical reason – Dr. Nwachukwu was fully aware of Jones's medical condition.  Despite that fact, as well as the fact that she supervises and oversees the medical services provided to inmates at NJSP such as Jones, Dr. Nwachukwu was deliberately indifferent to Jones's medical condition.  She took not action to ensure that he received the necessary medical care.  To the contrary, she oversaw a more-than-four-year delay in Jones's surgery.

29.     The unjustified delay in providing Jones with appropriate and necessary medical care caused him to suffer from severe headaches and impaired vision for years.

B.      **Neglect of Plaintiff's Shoulder and Neck Injuries**

30.     As noted above, on December 19, 2013, Jones was involved in an automobile accident that resulted in severe injuries to his shoulder as well as his neck and back.

31.     On January 27, 2014, Jones was taken to Ocean Medical Imaging Center for an MRI of his left shoulder.  The results were a partial tear of the supraspinatus tendon.  It was not a high-grade tear.

32.     On August 15, 2014, Dr. Ahmar Shakir, D.O., informed the NJSP Medical Department that Jones suffered from rotator cuff tendinitis of his left shoulder and that he previously was diagnosed with the above-mentioned tendon tear.  Dr. Shakir advised that Jones should continue physical therapy and anti-inflammation medication.  No additional course of treatment is taken.

33.     On September 24, 2014, Jones complained to the NJSP Medical Department (through an NJSP Health Services Report) of numbness, stiffness, and a burning sensation in his

left shoulder and neck area that was limiting his ability to function on a daily basis. He also complained of severe headaches.

34. On March 11, 2015, Jones was seen by Defendant Dr. Ahsan, who recommended that Jones receive physical therapy for his left shoulder pain. Jones voiced his concern that physical therapy did not help in the past, but Dr. Ahsan ignored Jones. Dr. Ahsan also gave Jones a cortisone injection for the soreness and pain in his neck and back and asked him to follow up in three months for possible surgery.

35. On June 30, 2015, Jones is seen by Physical Therapist Anne Peregmon for the therapy prescribed by Dr. Ahsan. Peregnmon questioned why Jones believed that physical therapy would help given his conditions; Jones responded that Dr. Ahsan had prescribed it.

36. The physical therapy failed to address or alleviate Jones's shoulder injuries, or the pain in his shoulder and neck area. To the contrary, the physical therapy caused more pain and further damage to the tear in his shoulder.

37. Jones again voiced his concerns to Dr. Ahsan that the physical therapy was not helping his injuries or alleviating his pain. Dr. Ahsan again ignored those concerns.

38. Eventually, on November 23, 2015, Jones underwent shoulder surgery to repair his rotator cuff on his left shoulder.

39. Following the surgery, Jones had several post-surgery consultations that required him to be transported from NJSP to a medical facility.

40. On March 9, 2016, Jones was returning to NJSP from one such visit to the hospital. Jones was being transported in a DOC owned and operated vehicle. A DOC officer demanded that Jones exit the van while still in ankle shackles. As Jones attempted to walk off

the van and step down into the street, he fell hard to the ground. Jones injured his left shoulder, neck, back and knee.

41. On March 10, 2016, Jones was examined by Jeremy Berg, RN. She recommended, among other things, an orthopedics consult and a re-examination in 7 days.

42. In May 2016, Jones was diagnosed with a full thick tear of his tendon. Upon information and belief, the tear was directly and proximately caused by Jones's fall from the van.

43. Over the course of the next several months, Defendants failed to properly address Jones's shoulder injuries following his fall from the DOC van. For example, as of August 2017, Dr. Ahsan simply continued to refer Jones for physical therapy despite the fact that for over 18 months it did not alleviate the pain and only continued to worsen the injury.

44. Throughout this time, Jones continued to file grievances complaining that he was not "being treated correctly" and that his complaints regarding the lack of care "are given short shrift." Dr. Nwachukwu, in particular, continued to ignore Jones's injuries and misrepresented to other prison officials that Jones's concerns of pain were being satisfactorily addressed. They were not and Dr. Nwachuwku knew that they were not.

45. To the contrary, upon information and belief, Jones's prescribed pain medication was taken away and replaced with over-the-counter medication in retaliation for Jones's repeated complaints.

46. Ultimately, in November 2016, Jones is again operated on his shoulder.

47. Notwithstanding the shoulder surgery, Jones continues to "suffer[] from neck, back and shoulder pain daily. These unaddressed medical conditions and failure to properly treat them have led to mental health problems for Jones.

C.      **DOC's Failure to Properly Transport Inmates To and From Medical Visits**

48.     As noted above, on March 9, 2016, Jones was returning to NJSP from one a post-surgery visit to University Hospital in Newark, New Jersey.   Jones was being transported in a DOC owned and operated vehicle.

49.     Once the vehicle arrived at NJSP garage, a DOC ordered Jones to exit the van.  At the time, Jones was wearing ankle shackles, thus restricting his ability to step forward or down.

50.     With Jones's back to the door, the DOC officer told Jones to step down from the van.  As Jones begin to walk backwards out of the van, that DOC officer left him to converse with a fellow DOC officer and neglected Jones.  Jones had no assistance in stepping down and was not offered a step down stool or ladder.

51.     As he attempted to step down, Jones fell hard to the ground, injuring his left shoulder, neck, back and knee.

## COUNT I

## EIGHTH AMENDMENT – 42 U.S.C. § 1983

(All Defendants Except John Does 6 through 10)

52.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 51.

53.     Jones suffered from a pituitary tumor, the treatment of which constituted a serious medical need.

54.     For over four years, Defendants were aware of Jones's serious medical need for treatment of the pituitary tumor either based upon personal knowledge or constructive knowledge.

55.     For over four years, despite having such knowledge, Defendants failed to properly treat the tumor or to follow a proper course of treatment.

56.     There was no medical reason for Defendants to delay the necessary surgery to remove Jones's pituitary tumor for over four years.

57.     Defendants acted with deliberated indifferent to Jones's pituitary gland.

58.     As a direct and proximate result of Defendants' deliberate indifference to Jones's pituitary, Plaintiff has suffered severe physical and emotional injuries, and continues to do so.

59.     Jones has also suffered several mental and emotional distress in addition to the physical pain as a result of the lack of medical treatment to which he was subjected.

## COUNT II

## EIGHTH AMENDMENT (42 U.S.C. § 1983)

(All Defendants Except Dr. Liu and John Does 6 through 10)

60.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 51.

61.     Jones's injuries to his shoulder constituted a serious medical need.

62.     Defendants were each aware of Jones's serious medical need for shoulder surgery either based upon personal knowledge or constructive knowledge.

63.     Defendants failed to properly treat Jones's shoulder injuries with surgery, as was ultimately required.  Instead, Defendants opted for a cheaper and less-effective course of treatment:  physical therapy.  Defendants did so even after learning, repeatedly, that physical therapy was not only failing to treat the shoulder injuries, but were actually aggravating them.

64.     Defendants acted with deliberate indifferent to Jones's shoulder injury.

65.     As a direct and proximate result of Defendants' deliberate indifference to Jones's shoulder injury, Plaintiff has suffered severe physical and emotional injuries, and continues to do so.

66. Jones has also suffered several mental and emotional distress in addition to the physical pain as a result of the lack of medical treatment to which he was subjected.

## COUNT III

## NEGLIGENCE

(Defendants DOC, Commissioner Hicks, and John Does 6 through 10)

67. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 51.

68. Defendants owed Jones a duty of care to act as a reasonable person and with due care in transporting an inmate for purposes of attending a medical appointment and obtaining medical care.

69. Defendants failed to act as a reasonable person would have in transporting an inmate and, therefore, breached the duty of care owed to Jones.

70. Specifically, Defendants neglected Jones and failed to assist him in exiting a DOC van while wearing ankle shackles.

71. Defendants, having placed the ankle shackles on Jones were, or reasonably should have been, aware that they severely restricted his movement.

72. Despite this awareness, Defendants ordered Jones (and permitted Jones) to exit the van, directly contributing to his fall.

73. As a direct and proximate cause of Defendants' breach of their duty of care to Jones, Jones suffered severe physical injuries.

74. Jones's injuries include, but are not limited to, his shoulder which subsequently required surgery, yet has not fully healed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against the Dfendant as follows:

A.     An award of actual, incidental, compensatory and consequential damages as appropriate under the law;

B.     An award of punitive damages in an amount to be proven at trial due to Defendants' willful and malicious activities;

C.     An award of reasonable attorneys' fees, costs, and expenses for this action, along with prejudgment and post-judgment interest; and

D.     Such other and further relief as this Court deems just and proper.

Dated: Trenton, New Jersey
       June 10, 2019

Respectfully submitted,

s/ Ricardo Solano Jr.
Ricardo Solano Jr.
FRIEDMAN KAPLAN SEILER
  &amp; ADELMAN LLP
One Gateway Center, 25th Floor
Newark, NJ 07102-5311
(973) 877-6400
Email: rsolano@fklaw.com

*Attorneys for Plaintiff Antonio Jones*

13

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

The matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: Trenton, New Jersey
       June 10, 2019

Respectfully submitted,

s/ Ricardo Solano Jr.
Ricardo Solano Jr.
FRIEDMAN KAPLAN SEILER
  &amp; ADELMAN LLP
One Gateway Center, 25th Floor
Newark, NJ 07102-5311
(973) 877-6400
Email: rsolano@fklaw.com

*Attorneys for Plaintiff Antonio Jones*