**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANTONIO JONES, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 18-1454 (PGS)(DEA) |
| | : | |
| v. | : | |
| | : | |
| NJ DOC CENTRAL | : | **OPINION** |
| TRANSPORTATION, et al., | : | |
| | : | |
| Defendants. | : | |

## PETER G. SHERIDAN, U.S.D.J.

### I. INTRODUCTION

Before the Court is Defendant Abu Ahsan's ("Defendant") motion for reconsideration (ECF No. 164) of the Court's Opinion and Order (ECF Nos. 162, 163) denying Defendant's motion for summary judgment. The Court has considered Defendant's submissions in support of his motion (ECF Nos. 164, 165), Plaintiff's opposition thereto (ECF No. 166), and Defendant's reply (ECF No. 172) and decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendant's motion for reconsideration is denied.

### II. FACTUAL AND PROCEDURAL BACKGROUND

The Court provides the factual and procedural background of this action in summary fashion because the parties are familiar with the facts and the Court has

reviewed the facts and background at length in its March 19, 2024 Opinion. (*See* ECF No. 162.) In brief, on February 6, 2018, Plaintiff filed his initial complaint asserting Eighth Amendment deliberate indifference to the need for medical care claims. (ECF No. 1.) Following the Court's screening of Plaintiff's initial complaint pursuant to 28 U.S.C. § 1915 (e)(2)(B) (ECF No. 8), a first motion to dismiss (ECF No. 17), Plaintiff's amended complaint (ECF No. 33), and a second motion to dismiss (ECF No. 56), Plaintiff filed the operative second complaint ("Complaint") raising claims against Defendant Ashan and defendants Ihuoma Nwachukwu, M.D. ("Nwachukwu"), Dr. James K. Liu ("Liu"), New Jersey Department of Corrections, and Marcus Hicks. (ECF No. 127.) On June 14, 2023, upon the parties' joint stipulation, the Court dismissed the Complaint against Marcus O. Hicks. (ECF No. 132.)

The Complaint raises Eighth Amendment deliberate indifference claims against Defendant, Nwachukwu, and Liu arising out of the treatment Plaintiff received for a pituitary tumor. (*See id.*) In its prior Opinion, the Court provided the following summary of the facts relevant to Defendant:

> Upon Plaintiff's July 1, 2014 arrival at NJSP, Plaintiff underwent a medical intake in which he reported to medical staff that he had a pituitary tumor. (ECF No. 140-1, Def. State. Of Mat. Facts ("DSOMF") ¶ 5.)
>
> On August 13, 2014, Plaintiff attended an ophthalmology consultation with Dr. Hitesh Patel, where it was

recommended Plaintiff's visual field be tested and a follow up appointment with neurology was ordered. (*Id.* ¶ 6.) Once a recommendation for an outside specialist or testing are approved, a schedular schedules the appointment or testing with the respective specialist office. (*Id.* ¶ 7.) Ahsan testified that the specialist office sometimes provides the date that is available, but prison policy is to schedule within 60 days of approval, unless the prison medical staff or the specialist deem it an urgent situation, which Plaintiff's situation was not deemed to be urgent. (ECF No. 140-4 at 45:15 to 46:11.)

On October 14, 2014, Plaintiff had a visual field test, which was ordered by Ahsan, but the results were inconclusive. (ECF No. 140-7 at 81-82.) On October 29, 2014, Plaintiff had a consultation with neurosurgeon Dr. Anthony Chiuco of St. Francis Medical Center ("SFMC"). (DSOMF ¶ 8.) Dr. Chiurco referred Plaintiff to a different facility as SFMC was unable to perform any transsphenoidal surgical intervention if a resection of the pituitary tumor was later necessary. (*Id.*)

On November 12, 2014, following Ahsan's approval, Plaintiff saw Dr. Javier Toboada for neurology consultation. (ECF No. 140-7 at 75-76.) Dr. Toboada recommended Plaintiff be referred for a neurosurgical consultation to be evaluated for possible surgery and that Plaintiff be followed by an endocrinology specialist. (*Id.*) In December 2014, following Ahsan's approval, Plaintiff was seen for a consultation with neurosurgeon Defendant Liu. (DSOMF ¶ 10; ECF No. 140-7 at 73; ECF No. 144-12 at 202-203.) Liu noted optic nerve compression, but Plaintiff's visual fields were grossly full. (ECF No. 144-12 at 202-203.) Liu ordered an MRI of Plaintiff's pituitary tumor with stealth to see the extent of the growth and for surgical planning. (*Id.*)

3

Liu testified in his deposition that a benign tumor of the pituitary gland requires a proper evaluation, workup, and monitoring, or sometimes intervention depending on the case. (ECF No. 140-6 at 29:11-14.) Several treatment plans exist for patients with a pituitary tumor, which include observation, radiation therapy, surgery, and hormonal treatment depending upon the case. (DSOMF ¶ 12.) If a patient is undergoing an observation treatment plan, the patient receives periodic MRI scans of the tumor usually on a yearly basis. (*Id.*) Liu testified that stealth "is a specific sequence for the MRI that we typically will order in preparing if someone is potentially expected or already expected to have surgery and the stealth protocol allows us to use a technology called neuro navigation during surgery." (ECF No. 140-6 at 47:15-19.) Liu also testified that he was not going to make a surgical recommendation at that time based on out-of-date data. (*Id.* 48:16-23.)

On February 12, 2015, Ahsan ordered the MRI, lab tests, and the follow up consultation that were requested by Liu. (ECF No. 140-7 at 73-74.) On February 25, 2015, Plaintiff had an endocrinology consult with Dr. Merna Soriano, in which it was recommended Plaintiff have a surgical consultation. (DSOMF ¶ 17.) On March 25, 2015, Plaintiff had the ordered MRI. (ECF No. 140-8 at 12-17.)

On April 29, 2015, Liu saw Plaintiff for a follow up and Liu referred Plaintiff to an Ears Nose and Throat ("ENT") specialist, Dr. Eloy, because the surgeries are performed as a team between a neurosurgeon and an ENT. (DSOMF ¶ 18; ECF No. 140-6 at 23:4-5.)

During this time, Plaintiff was also attending physical therapy for his left shoulder. (DSOMF ¶ 19.) On May 21, 2015, his treating orthopedist, Dr. Shakir, recommended additional physical therapy. (*Id.*)

4

On June 3, 2015, Plaintiff saw optometrist Dr. Robert Bucchino with complaints of blurry vision and received prescription eyewear. (ECF No. 140-7 at 67-69.) On August 13, 2015, Plaintiff had a follow up with Dr. Shakir and it was noted that physical therapy was helping, and Plaintiff should continue with it. (ECF No. 140-7.) It was also noted that if Plaintiff's "symptomology persist[ed], certainly over the next 2-3 months, then the only viable [option] would be surgical intervention." (*Id.*) Subsequently, on October 22, 2015, Dr. Shakir recommended surgical intervention. (DSOMF ¶ 21.) Plaintiff understood the risks and benefits of surgery and informed consent was obtained. (*Id.*)

Medical Defendants submit that at the time Dr. Shakir recommended the shoulder surgery, Defendant Liu's evaluation for possible pituitary surgery was an ongoing process, and the pituitary gland was stable, and the most recent MRI showed minimal growth or impact on the optic nerve. (DSOMF ¶ 22.) Defendant Ahsan believed that Plaintiff's shoulder needed to be prioritized. (*Id.*)

Plaintiff submits that when he saw Liu on April 29, 2015, Liu noted that Plaintiff had a "symptomatic pituitary tumor," and he requested physical therapy for Plaintiff's neck pain, lab work, an ophthalmology evaluation, and a consultation with an ENT regarding possible surgery. (ECF No. 144-1, Pl. State. Of Mat. Facts ("PSOMF") ¶ 22.) Additionally, Liu asked to see Plaintiff in one month, expecting that the requested workup would be complete by then. (*Id.*) Liu testified at his deposition that he was "leaning towards possible surgery, but [he] need[ed] some more completed workup before making the final decision." (ECF No. 144-8 at 78:15-15.)

5

On November 23, 2015, Plaintiff underwent arthroscopy of his shoulder with Dr. Shakir. (DSOMF ¶ 23.)

On January 5, 2016, Plaintiff saw Dr. Eloy, the ENT specialist that Liu had recommended in April 2015. (ECF No. 144-14 at 49-52.) Dr. Eloy recommended that Plaintiff follow up with Liu. (*Id.* at 52.) On March 9, 2016, Plaintiff saw Liu for a neurological consult, and Liu wished to redo his testing workup. (DSOMF ¶ 25.) Returning from his consultation with Defendant Liu, Plaintiff suffered a new injury to his left shoulder after falling from a transport van and complained of pain. (*Id.* ¶ 26.) Plaintiff had a consult with orthopedist Dr. Shakir the following day. (*Id.*)

On March 2016, Defendant Ahsan left his role as Medical Director at NJSP and was replaced by Nwachukwu. (*Id.* ¶ 27.)

(ECF No. 162 at 3-8.)

On October 23, 2023, Defendant, Nwachukwu, and Lui filed a motion for summary judgment and the New Jersey Department of Corrections filed a separate motion for summary judgment. (ECF Nos. 139, 141 respectively.) Plaintiff filed a response (ECF No. 144) and Defendant, Nwachukwu, and Lui filed a reply (ECF No. 147). On March 19, 2024, the Court entered an Opinion and Order granting the motion for summary judgment as to Nwachukwu and Liu and denying it as to Defendant. (*See* ECF Nos. 162, 163.) The Court also granted New Jersey Department of Correction's motion for summary judgment. (*See id.*) Defendant now

seeks reconsideration of the portion of the Opinion and Order denying him summary judgment. (*See* ECF No. 164.)

## III. STANDARD OF REVIEW

Motions for reconsideration are permitted under Local Civil Rule 7.1(i), but reconsideration is considered an extraordinary remedy and is granted only sparingly. *See Buzz Bee Toys, Inc. v. Swimways Corp.*, 20 F. Supp. 3d 483, 515 (D.N.J. 2014); *Andreyko v. Sunrise Senior Living, Inc.*, 993 F. Supp. 2d 475, 477 (D.N.J. 2014). Motions for reconsideration are not intended as opportunities to reargue old matters or raise issues that could have been raised previously. *See Andreyko*, 993 F. Supp. 2d at 477–78; *P. Schoenfeld Asset Mgm't LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001). Instead, Local Civil Rule 7.1(i) directs a party seeking reconsideration to file a brief "setting forth concisely the matter or controlling decisions which the party believes the Judge . . . has overlooked." L. Civ. R. 7.1(i).

To prevail on a motion for reconsideration, the moving party bears the burden of demonstrating one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (internal citation omitted). A court commits clear error of law "only if the record cannot support the findings that led to the ruling." *ABS*

7

*Brokerage Servs. v. Penson Fin. Servs., Inc.*, No. 09-4590, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010) (citing *United States v. Grape*, 549 F.3d 591, 603–04 (3d Cir. 2008) "Thus, a party must . . . demonstrate that (1) the holdings on which it bases its request were without support in the record, or (2) would result in 'manifest injustice' if not addressed." *Id.* Moreover, when the assertion is that the Court overlooked something, the Court must have overlooked some dispositive factual or legal matter that was presented to it. *See* L. Civ. R. 7.1(i). In short, "[m]ere 'disagreement with the Court's decision' does not suffice." *ABS Brokerage Servs.*, 2010 WL 3257992, at *6. (quoting *P. Schoenfeld Asset Mgmt., LLC*, 161 F. Supp. 2d at 353); *see also United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999) ("Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for [reconsideration].")

## IV. DISCUSSION

Defendant does not argue that there is an intervening change of law or that new evidence is available. Rather, Defendant moves for reconsideration arguing (1) the Court's decision denying summary judgment overlooked factual matters that support summary judgment for Defendant and (2) the Court overlooked controlling decisions of law and a medical reason for the delay in Plaintiff's treatment. (*See generally* ECF No. 165.) In essence, Plaintiff argues that the extraordinary remedy

8

of reconsideration is necessary to correct a clear error of law or prevent manifest injustice. For the reasons discussed below, Plaintiff's arguments are unconvincing.

Defendant submits that the Court mischaracterized his argument in support of summary judgment. Defendant notes that the Court found Defendant "decided to delay tumor treatment 'because Plaintiff needed shoulder surgery.'" (ECF No. 165 at 8.) However, Defendant argues that he did not claim that he delayed the tumor treatment because Plaintiff needed shoulder surgery. Rather, Defendant claims he argued that "he made a medical decision to prioritize medical treatment for a condition that he believed more troublesome (the shoulder) over an[o]ther medical condition that he believed to be less symptomatic and immediate in its nature (the pituitary tumor)." (*Id.*)

Defendant's claim that the Court's summary judgment Opinion "mischaracterized" his argument that Defendant prioritized the treatment for Plaintiff's shoulder condition over his stable pituitary tumor is inaccurate. Additionally, Defendant fails to point to any dispositive factual matter that was overlooked by the Court.

The Court clearly considered the entirety of Defendant's argument on summary judgment. While the Court did find that "Defendant Ahsan argue[d] the delay of treatment decision was made because Plaintiff needed shoulder surgery, he fails to point to any evidence that Plaintiff in fact needed shoulder surgery at the time

he decided to delay the testing and return appointment to Defendant Liu." (ECF No. 162 at 23.) Defendant fails to acknowledge that the Court also noted that "Ahsan argue[d] that Plaintiff was provided with consistent medical consults/visits and the prioritization of one medical condition (i.e., Plaintiff's shoulder) over another (i.e. Plaintiff's pituitary tumor) is not a basis for a claim of deliberate indifference." (ECF No. 162 at 17, citing ECF No. 140 at 11-14.) Additionally, the Court acknowledged Defendant's argument that Plaintiff's pituitary tumor as stable, and thus, he prioritized Plaintiff's shoulder. (*Id.* at 21.)

In discussing Defendant's arguments on summary judgment, the Court considered the evidence of record from the nine-month period where Plaintiff's pituitary treatment was delayed, and explained that in April 2015, Dr. Liu noted that Plaintiff's pituitary tumor was symptomatic and would likely require surgery. On reconsideration, Defendant now argues that Defendant's "knowledge of symptoms related to the pituitary tumor during this specific timeframe, April 2015 to December 2015, is not demonstrated." (ECF No. 165 at 11.) Defendant supports this argument with Liu's deposition testimony that Plaintiff was experiencing blurry vision, nausea, and headaches, and he could only postulate that those complaints could be symptomatic from the pituitary tumor. (ECF No. 165, citing ECF No. 140, Ex. E at 74:21 to 75:1.) The Court explicitly cited to this portion of Liu's deposition testimony. (ECF No. 162 at 20.) Defendant has not shown that this is a dispositive

factual matter that was overlooked by the Court. Additionally, that deposition testimony was from after litigation in this matter began and is not dispositive of Defendant's knowledge regarding Plaintiff's pituitary symptoms in April 2015. Instead, Dr. Liu's April 29, 2015, medical note assessed that Plaintiff was a forty-seven-year-old male with "incidentally, but *symptomatic pituitary tumor*." (ECF No. 140-7 at 92, emphasis added.) Defendant's argument that the record does not show that he had knowledge the Plaintiff's pituitary tumor was symptomatic is contradicted by this medical record.

Finally, in support of his argument that the Court incorrectly focused on whether shoulder surgery was *needed* at the time Defendant decided to prioritize the shoulder over the pituitary, Defendant points to his deposition testimony explaining that based on the fact that Plaintiff's pituitary tumor was stable, he was comfortable that the "pituitary would not have any swift and quick disabling impact as opposed to the shoulder when [Plaintiff] was having more problems and needed to be prioritized." (ECF No. 165 at 9, citing ECF No. 140, Ex. C. 136:11-20.) However, the Court explained the following:

> [I]n April 2015, Liu found Plaintiff was exhibiting symptoms that were likely being caused by the pituitary tumor and would likely require surgery. However, Liu required some follow up testing and for Plaintiff to see Dr. Eloy before he could officially recommend surgery. While Plaintiff was experiencing symptoms related to his shoulder, in May and August 2015, Dr. Shakir found physical therapy was helping and Plaintiff should continue

> with that course of treatment. (DSOMF ¶ 19; ECF No.
> 140-7 at 66.) It was not until October 2015, six months
> after Defendant Liu requested follow up testing and noted
> that Plaintiff's pituitary tumor was symptomatic, that
> shoulder surgery was recommended. (DSOMF ¶ 21.)

(ECF No. 162 at 21-22.) The Court explained that both the pituitary tumor and

Plaintiff's shoulder were symptomatic. Dr. Lui required further testing before he

could recommend pituitary surgery, and at the same time Plaintiff's shoulder

physical therapy was "helping." (See ECF No. 140-7 at 66.) In fact, the August 2015,

it was noted that Plaintiff's shoulder surgery had "significantly improved over time."

(*Id.*)

The Court did not mischaracterize or overlook Defendant's arguments. The

Court thoroughly considered all of Defendant's arguments and the lengthy medical

records in this matter. Defendant does not meet the high standard required for relief

on a motion for reconsideration. He does not set forth an intervening change in the

controlling law, nor does he argue evidence is now available that was not available

when the Court made its summary judgment decision. *See U.S. ex rel. Shumann v.*

*Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848–49 (3d Cir. 2014). To prevail under the

"manifest injustice" prong, Defendant must show that "dispositive factual matters or

controlling decisions of law were brought to the court's attention but not

considered." *P. Schoenfeld Asset Mgmt.*, 161 F. Supp. 2d at 353. Defendant has

failed to assert any dispositive factual matters that were not addressed by the Court.[1]
In essences, Defendant is attempting to relitigate the issues previously decided in the
Court's March 19, 2024 Opinion and Order. This is not a valid basis for a motion
for reconsideration. *See Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011)
(expressly forbidding the use of a motion for reconsideration to relitigate a motion).

## V.  CONCLUSION

Accordingly, the Court finds that Defendant has failed to meet the standard
for reconsideration, and his motion for reconsideration (ECF No. 164) is denied. An
appropriate Order accompanies this Opinion.


DATED:   5/15/24


PETER G. SHERIDAN
United States District Judge

---

[1] Although Defendant also argues that the Court overlooked controlling decisions of
law and a medical reason for the delay in Plaintiff's treatment, Defendant fails to
point to any law that the Court overlooked. Rather, Defendant reasserts his
arguments that the factual record supports Defendant's argument that he prioritized
one medical condition over another. The Court has addressed this issue.

13