UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANTONIO JONES, | : |
| Plaintiff, | : Civil Action No. 18-1454 (GC) (JTQ) |
| v. | : **MEMORANDUM OPINION** |
|  | : **AND ORDER** |
| NJ DOC CENTRAL TRANSPORTATION, *et al.*, | : |
| Defendants. | : |

This decision addresses Plaintiff's pending Application for Pre-Approval of *Pro Bono* Services to cover future fees for Plaintiff's expert (the "Application"). Plaintiff previously sought and received $37,500.00 in expert fees, which was funded from this District's Attorney's Admission Fee Account (the "Fund"). This Fund is not a bottomless coffer to draw from, however; it is an account of limited resources that provides funding for the many *pro bono* assignments in this District, among other things.

And that is why applications over a certain monetary threshold require judicial pre-approval. The instant Application falls into this category, as it seeks pre-approval of $76,400.00, a staggering amount that appears unprecedented not only in this District but nationwide. To receive the Court's pre-approval, the requesting party must demonstrate that the services and expenses requested are "reasonable and necessary."

Plaintiff's Application fails to make this showing. Further, the amount

Plaintiff requests raises serious due process issues, because granting the Application and funding Plaintiff's prosecution with $76,400.00 would have the Court place its thumb on the scales of justice in such a way to render meaningless the concept of impartiality. The undersigned will do no such thing.

For these reasons, Plaintiff's Application is denied.

## I. BACKGROUND[1]

### A. Plaintiff's Allegations

Plaintiff Antonio Jones ("Plaintiff") is a state prisoner who brought this action alleging that defendants Abu Ahsan, M.D. ("Ahsan" or "Defendant"), Ihuoma Nwachukwu, M.D., Dr. James K. Liu, and the New Jersey Department of Corrections ("NJDOC") violated his civil rights. ECF Nos. 1, 33, 127. On December 4, 2018, the Court appointed *pro bono* counsel. ECF No. 14. After over five years of litigation,[2] what remains of Plaintiff's Second Amended Complaint is one claim (an Eighth Amendment deliberate indifference claim) against one Defendant (Ashan) for the medical care provided for Plaintiff's pituitary tumor.

By way of background, NJDOC contracts with Rutgers, the State University of New Jersey ("Rutgers") to provide medical care for inmates in NJDOC's custody. ECF No. 162 at 3. From July 2014 to March 2016, Ahsan held a supervisory role at New

---

[1] The Court has set forth the background of this matter at length in its previous decision (ECF No. 162) and therefore limits its discussion to the salient facts.

[2] Plaintiff's allegations were pared down as the Court ruled on a motion to dismiss (ECF Nos. 29, 30), Plaintiff amended his pleadings (ECF Nos. 33, 127), the Parties filed a joint stipulation dismissing a defendant (ECF No. 132), and the Court issued opinions on two motions for summary judgment (ECF No. 162) and a motion for reconsideration (ECF No. 174).

Jersey State Prison ("NJSP") and oversaw Plaintiff's medical care for his pituitary tumor. *Id*. When Plaintiff arrived at NJSP in July 2014, he reported to medical staff that he had a pituitary tumor and consultations with specialists began soon thereafter. *Id*. at 4. During this time, Plaintiff also was attending physical therapy on his left shoulder. *Id*. at 7. On October 22, 2015, surgical intervention for his shoulder was recommended and on November 23, 2015, Plaintiff underwent arthroscopic surgery on his shoulder. *Id*. at 7-8. The Court previously held that up until April 2015, "the facts d[id] not show Ahsan was deliberately indifferent to Plaintiff's need for treatment," but from that time through January 2016, Plaintiff received no treatment or testing for his pituitary tumor. *Id*. at 20-21.

Although Ahsan argued that Plaintiff received treatment in an approach that "was consistent with the medical judgment of Ahsan to address competing medical conditions, one of which (Plaintiff's shoulder) received a surgical recommendation" (*id*. at 21), the Court denied Ahsan's summary judgment motion, finding that he failed to point to evidence "that Plaintiff in fact needed shoulder surgery at the time he decided to delay the testing and return appointment [related to the pituitary tumor]" (*id*. at 23).

### B. Plaintiff's Pre-Approval Applications

On July 6, 2022, Plaintiff applied for the Pre-Approval of *Pro Bono* Services, seeking to retain a neurosurgeon to serve as an expert in this case. The total cost, according to counsel's submission, was $126,500.00. ECF No. 194-6. On September 12, 2022, the Court "granted" the application in part. *Id.* Specifically, the Court

approved $37,500.00, so Plaintiff could "engage the expert in preparation for the deposition(s) of defendants' witnesses." *Id.* But the Court deferred addressing "[t]he balance of the application . . . pending further consideration." *Id.*

Litigation progressed and though the Court conducted a settlement conference on October 2, 2024, an amicable resolution was not reached. ECF No. 184; ECF No. 194-1, Moving Brief ("Mov. Br.") at 12;[3] ECF No. 195, Opposition Brief ("Opp. Br.") at 5. And with summary judgment having been denied, the Parties needed to complete expert discovery and begin trial preparation. That prompted the instant application, in which Plaintiff sought approval of the $89,000.00 balance that the Court previously deferred ruling on. ECF No. 194-8.

On October 18, 2024, the undersigned advised Plaintiff's counsel that $89,000.00 exceeds the typical amount requested. The Court asked Plaintiff's counsel to discuss a cost reduction with the expert, reminding him that "this matter involves a *pro bono* appointment for which Appendix H encourages either free or reduced costs for . . . experts." *Id.* at 3. Plaintiff wrote again several days later advising that the expert agreed to reduce the hourly rate by $100.00 (from $1,500.00 to $1,400.00), the trial testimony daily rate from $16,000.00 to $15,600.00, and to charge an hourly rate of $1,900.00 for deposition testimony rather than a daily rate. *Id.* at 2-3. The adjustments resulted in a revised total of $76,400.00. *Id.*

On November 4, 2024, the Parties appeared for a conference, during which the Court addressed the Application, as well as specific concerns the undersigned had

---

[3] The pages cited herein are those provided by PACER.

4

with the amount being requested. The Court advised that it would "e-mail counsel a sampling of cases the Court has found addressing the expert issue." *See* ECF No. 191. Immediately thereafter, the Court provided the Parties with four cases[4] within the Third Circuit. ECF No. 194-9. The Court directed counsel "to confer with their respective clients and each other" to discuss alternatives to Plaintiff's Application and "inform[ ] the Court whether the Parties have reached agreement on any proposal." ECF No. 191. Once the Parties submitted a letter advising that they were unable to reach an agreement (ECF No. 192), the Court entered a briefing schedule (ECF No. 193).

Plaintiff's briefing contends that: (1) Court approval of $76,400.00 from the Fund is not a due process violation because courts have the inherent power to authorize *pro bono* reimbursement; (2) the expenses are reasonable, necessary, and fair; and (3) to require a new expert would be unfair since the Court approved Plaintiff's first reimbursement request. Mov. Br. at 14-26.

Defendant opposes the Application, arguing that Plaintiff does not adequately address the constitutional issue that would result from the requested reimbursement and contends that the expert expenses are neither reasonable nor fair. Opp. Br. at 6-13. Defendant also submits that an expert is not necessary because a claim of deliberate indifference calls for a subjective inquiry. *Id.* at 11.

---

[4] These cases are *Boring v. Kozakiewicz*, 833 F.2d 468 (3d Cir. 1987), *Young v. Martin*, 801 F.3d 172 (3d Cir. 2015), *Wheeler v. Wetzel*, 2018 WL 4658472 (W.D. Pa. Aug. 28, 2018); *Scott v. Myers*, 2023 WL 1108391 (W.D. Pa. Jan. 30, 2023). ECF No. 194-9.

Plaintiff's reply brief reiterates that, in general, reimbursements from the Fund do not raise due process concerns. ECF No. 196, Reply Brief ("Reply Br.") at 5-6. Plaintiff further submits that Plaintiff's reimbursement would level the playing field instead of tipping the scale. Plaintiff also raises a fairness issue, positing that he relied on the Court's first approval as precedent for reimbursement "of the magnitude sought now." *Id.* at 5-12, 7.

## II. PRE-APPROVAL PROCESS

Appendix H of the Local Civil Rules provides:

> Appointed *pro bono* attorneys or firms may apply to the Judge during the litigation or within a reasonable period [ ] for reimbursement of costs reasonably incurred in connection with the litigation, not including attorneys' fees, to be paid from the Attorneys' Admission Fee Account ("Fund").

The Local Rules further require that "[a]ppointed *pro bono* attorneys shall request pre-approval for services needed during the litigation when the aggregate of expenses for which reimbursement is sought in an individual case exceeds $5,000." L. Civ. R. App. H. § 8.

The pre-approval process is straightforward. Applicants seeking pre-approval must certify that the expenses are "reasonable and necessary" and "are intended . . . for . . . litigation expenses such as subpoena fees, witness fees, attendance fees for stenographers, deposition transcripts, expert fees, [and] requests for production of records[.]" Appl. For Pre-Approval of *Pro Bono* Servs., Dist. Ct. N.J. (Oct. 2022); Procs. for Reimbursing *Pro Bono* Att'ys ¶ 1, Dist. Ct. N.J. The court's approval of any application is the court's endorsement that the request is "fair and reasonable." Appl.

6

For Pre-Approval of *Pro Bono* Servs., Dist. Ct. N.J. (Oct. 2022). But, to be clear, pre-approval is not guaranteed.

### III. ANALYSIS

Plaintiff's arguments fail to address the fundamental question that the Application presents, which is: Whether Plaintiff's request for financial assistance from the Fund is so excessive that it unfairly prejudices the party paying its own court costs. Here, the Court concludes that Plaintiff's request plainly crosses that line triggering serious due process issues. And even if there were no due process concerns, Plaintiff's Application would still fail because the request is neither fair nor reasonable.

#### A. To Permit the Requested Reimbursement Would Violate Due Process.

##### i. Fund Reimbursements Are Not Without Limits

The Due Process Clause requires courts to act with impartiality and fairness to *all* litigants. *See, e.g., Johnson v. Mississippi,* 403 U.S. 212, 216 (1971) ("Trial before an unbiased judge is essential to due process") (internal quotation marks omitted); *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 242 (1980) ("The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases . . . it preserves both the appearance and reality of fairness, 'generating the feeling, so important to a popular government, that justice has been done'"); *Bracy v. Gramley,* 520 U.S. 899, 904–905 (1997) ("Due Process Clause clearly requires a 'fair trial in a fair tribunal' before a judge with no actual bias against the defendant or

interest in the outcome of his particular case.") (internal citation omitted). That is all the Court seeks to do here.

Plaintiff's briefing tries to get around this issue by misstating the core due process concern. The Court is unmoved. There is *no* dispute that the Court has authority to approve payments for expert fees. Nor is the Court saying "that [the] . . . payment of expert fees for indigent parties violates due process." Mov. Br. at 6. But, contrary to Plaintiff's belief, "the Local Rules" *do not* impose "a *mandatory obligation*" on the Court to approve significant fee requests, such as the one at issue here. Mov. Br. at 14 (emphasis added).

The due process issue is thus one of degree. "The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). This "preserves both the appearance and reality of fairness, generating the feeling, so important to a popular government, that justice has been done[.]" *Id.* (internal citation and quotation omitted). To that end, "[t]he Due Process Clause . . . do[es] not give a court 'the power to tilt the scales of justice in favor of one litigant by funding its expert witness.'" *Vasquez v. Wingard*, 2020 WL 822160, at *1 (E.D. Pa. Feb. 3, 2020) (quoting *Young v. Martin*, 801 F.3d 172, 185 (3d Cir. 2015)).

The relevant question then is whether the Court's approval of Plaintiff's proposed expert fee request of $76,400.00 would tilt the scales of justice in such a way that the appearance and reality of fairness would be illusory. The Court has little trouble concluding that it would. Nothing Plaintiff argues alters that conclusion.

Indeed, Plaintiff fails to even acknowledge that the body of Third Circuit law that permits expert fee reimbursement has limited such reimbursement to no more than $5,700.00. Mov. Br. at 15. And Plaintiff's reliance on decisions from other circuits does nothing to help his cause. The total reimbursement amounts approved by those courts did not exceed $17,933.43—a fraction of what Plaintiff seeks here—and *only a small portion* of the court-approved amounts actually applied to expert fees. *Id.* at 17 (citing *Groover v. Prisoner Trans. Servs., LLC*, 2019 WL 3974143, at *4 (S.D. Fla. Aug. 22, 2019)); *see also id.* at 17-18 (citing *Stevenson v. Windmoeller & Hoelscher Corp.*, 39 F.4th 466, 472-73 (7th Cir. 2022) (addressing motion to appoint expert where plaintiff did not seek reimbursement for expert fees); *Morgan v. Cannizzaro*, 2022 WL 16530159, at *2 (E.D. La. Oct. 28, 2022) (awarding $6,800 to pay plaintiff's expert); *Culbreath v. Griffin*, 2018 WL 5307480, at *1 (S.D.N.Y. Oct. 23, 2018) (recommending that plaintiff's application for $11,000 for expert services from *pro bono* fund be granted); *Giraldes v. Prebula*, 2012 WL 1355739, at *2 (E.D. Cal. Apr. 18, 2012) (permitting reopening discovery for retaining expert but not approving reimbursement amount).

Plaintiff also cites cases where courts have encouraged attorneys to make use of the Fund. But these cases fail to fill the gaping hole in Plaintiff's argument. Mov. Br. at 16. Again, no one disputes that *pro bono* counsel is entitled to *some* reimbursement. What Plaintiff seeks here, however, is a far cry from that. And it is neither fair nor appropriate for this Court to allow so much of the Fund's resources to be devoted to one litigation, particularly given the significant constitutional issue.

### ii. The Requested Reimbursement Does *Not* Level the Playing Field.

Plaintiff advances a curious argument to convince the undersigned that the requested expert fees are appropriate. Plaintiff contends that his Application is "leveling the playing field" because as an employee of Rutgers, Ahsan "already has access to public funds to pay for his own expert." Mov. Br. at 19. Plaintiff's argument is rejected.

The Third Circuit's decision in *Boring v. Kozakiewicz* is dispositive on this point. 833 F.2d 468 (3d Cir. 1987). In *Boring*, the Third Circuit addressed the necessity of medical expert testimony for pretrial detainees' claims for lack of medical care. The Third Circuit explained that "[t]he plaintiffs' dilemma in being unable to proceed in this damage[s] suit because of the inability to pay for expert witnesses does not differ from that of nonprisoner claimants who face similar problems." *Id.* at 474. The court reasoned that "[b]y seeking government funding in this case, plaintiffs are in effect asking for better treatment than their fellow-citizens who have not been incarcerated but who have at least equal claims for damages." *Id.*

So, too, here. While Plaintiff claims he is not "asking for better treatment" that is precisely what he is doing. Mov. Br. at 19. Indeed, Plaintiff wants the Court to provide him with approximately $76,000 so Plaintiff's expert can continue to assist with the prosecution of his case. What other similarly situated litigants have access to such resources? The answer is simple: None. Plaintiff's fellow citizens either pay their own litigation costs out of pocket or risk having their cases dismissed. The Court already has provided Plaintiff with ample funds to litigate his case. The law

requires nothing further. *See Boozer v. Oliver*, 2024 WL 3758823, at *1 (W.D. Pa. Aug. 12, 2024) (quoting *Boring*, 833 F.2d at 474); *Hall v. Berdanier*, 2013 WL 818603, at *3 (M.D. Pa. Mar. 5, 2013) (explaining that "the Third Circuit held that § 1915 makes no provision for a district court to either pay or waive fees for an expert witness").[5]

But there is more. Plaintiff's briefing likewise fails to offer a sincere counter to the three other cases the Court shared with the Parties, each of which holds that "a court does not have the power to tilt the scales in favor of one litigant by funding its expert witnesses." *Young v. Martin*, 801 F.3d 172, 185 (3d Cir. 2015) (citing *Boring*, 833 F.2d at 474). That these decisions addressed requests for the appointment of experts under Federal Rule of Evidence 706 as opposed to Appendix H does not make them "inapposite," as Plaintiff contends. Mov. Br. at 20. Indeed, the *Wheeler* and *Scott* courts expressly addressed the constitutional implications of funding one party, saying "[i]f Rule 706 did not forbid it, the *Due Process Clause would bar a trial court from funding experts for one side of a lawsuit*." *Wheeler v. Wetzel*, 2018 WL 4658472, at *8 (W.D. Pa. Aug. 28, 2018) (emphasis added); *Scott v. Myers*, 2023 WL 1108391, at *1 (W.D. Pa. Jan. 30, 2023) (holding that giving the court the power to tilt the scale "would violate the Rules Enabling Act and the Due Process Clause").

---

[5] The Court also has a practical concern with Plaintiff's argument, particularly since the majority (if not all) of the cases where *pro bono* counsel is assigned involve indigent *pro se* plaintiffs in § 1983 cases where the defendants are state actors whose defense is funded by tax dollars. If "leveling the playing field" by paying tens of thousands of dollars in expert fees becomes standard in *pro bono* cases, then the Court worries that the Fund quickly will be depleted.

11

The point is simple: A court is not permitted to favor one party over another. And the fact that one party might have more resources does not somehow justify compromising the Court's impartiality. The undersigned spent considerable time and effort explaining this to counsel before the briefing was filed. ECF No. 194-9. This was not for the Court's benefit; it was done so Plaintiff could consider the Court's concerns, make a fully informed decision, and perhaps proffer an alternative solution that would allay the Court's issues with the Application.

Plaintiff elected to press forward with his Application and brief the issue. But Plaintiff's briefing fails to adequately explain why the reasoning set forth in the cases the Court identified is inapplicable here. That is because the cases cannot be meaningfully distinguished.

### B. The Fees at Issue Are Neither Reasonable Nor Fair.

Appendix H of the Court's Local Civil Rules provides an additional basis to deny Plaintiff's Application. Appendix H plainly permits "reimbursement of costs ***reasonably*** incurred in connection with the litigation." L. Civ. R. App. H. § 8 (emphasis added). Plaintiff's efforts to justify the amount being requested as fair and reasonable do not withstand scrutiny.

First, the Court rejects Plaintiff's contention that the prior approval served as some sort of guarantee that Plaintiff would receive the deferred funds. *See* Mov. Br. at 22. Plaintiff submits that after approving his first application, the Court set a schedule for summary judgment motions that, if denied, would be followed by a settlement conference. *Id.* at 11. And if the case did not settle, "Jones could renew his

application for the balance of the expert expenses." *Id*. But this proves nothing.

Plaintiff was, of course, free to submit any application he chose to, but the Court neither committed to approving the rest of Plaintiff's application nor in any way suggested that the unaddressed fees were "fair and reasonable." *Id*. at 11, 25. To the contrary, the Order's plain language expressly provided that "[t]he balance of the application is deferred *pending further consideration*." ECF No. 194-6 (emphasis added). Nothing in the Court's Order endorsed a future application and/or the deferred amount. To the extent Plaintiff thought differently, he did so at his own peril. *See* Mov. Br. at 19.

Second, Plaintiff makes much of his expert's reduced rate, but it is unclear why, as the *de minimus* reduction is not compelling. The numbers prove this point. After the Court raised a concern about the amount requested ($89,000.00), Plaintiff's expert reduced his hourly rate by just $100.00 and the trial testimony daily rate by $400.00. ECF No. 194-8. With these adjustments, Plaintiff's Application still seeks a fee that is unprecedented in this District (**$76,400.00**). *Id*.

Plaintiff tries to defend this significant sum with another red herring. This, too, falls short. This is *not* a case where the Court is tasked with simply ruling on what a reasonable expert fee for a surgeon would be. Nor could the Court ably make such an assessment given the minimal information before it. Focusing on the issue at hand, the Court must decide what amount can reasonably be pulled from the Fund, where withdrawal amounts rarely exceed several thousand dollars and certainly do not come near the amount being requested here. For this reason, the Court is not

13

persuaded by Plaintiff's review of reasonable expert fees for surgeons and neurologists. *See* Mov. Br. at 22-24.

Nor do the cases Plaintiff cite help. The decisions are from outside the Third Circuit, and *critically involve neither a pro bono appointment nor the payment of monies from a similar type of fund. Id.* at 22-23 (citing *Jones v. Nat'l R.R. Passenger Corp.*, 2022 WL 834315, at *2-4 (N.D. Cal. Mar. 21, 2022); *Davies v. Israel*, 2019 WL 13257002, at *1-2 (S.D. Fla. Jan. 10, 2019); *Walker v. Spike's Tactical, LLC*, 2015 WL 70812, at *4 (D. Nev. Jan. 5, 2015); *Miller v. Credit*, 2013 WL 1833310, at *3 (M.D. La. May 1, 2013); *James v. Boland*, 2020 WL 857630, at *1 (Conn. Super. Ct. Jan. 16, 2020)). And, as Defendant correctly highlights, even the neurologist and surgeon rates Plaintiff relies on fall well below what Plaintiff's expert seeks to charge here. *See* Mov. Br. at 22-23; Opp. Br. at 9-10. It is thus unclear why Plaintiff would rely on such decisions for authoritative support.

For these reasons, Plaintiff's arguments are misplaced.

### C. The Necessity Of Expert Testimony Will Not Be Decided At This Juncture.

The Court declines to address whether Plaintiff's expert is even necessary. *See* Mov. Br. at 24; Opp. Br. at 11-12; Reply Br. at 10-11. The issue has not been sufficiently briefed and the Parties fail to explain why this challenge should be addressed now. The instant application involves a targeted inquiry into whether Plaintiff's Application appropriately sets forth why the identified expert expenses are reasonable and necessary. *See* Appl. For Pre-Approval of *Pro Bono* Servs., Dist. Ct.

N.J. (Oct. 2022). Consequently, the Court will not wade into a debate that is neither fully ripe nor adequately briefed.[6]

## IV. CONCLUSION

The Court recognizes the import of this decision. In no way does the Court seek to deter counsel from taking on complex *pro bono* assignments. *Pro bono* counsel generally—and the appointed counsel in this case specifically—are tremendous assets to the Court and their respective clients. Their work is critical to the Court's role in administering justice in an efficient manner, consistent with Rule 1. But as a gatekeeper, the undersigned must deny applications (such as this one) where the amount being sought is neither fair, nor reasonable, nor necessary.

For these reasons, as well those set forth above, Plaintiff's Application fails. Accordingly,

**IT IS** on this __23rd__ day of April 2025,

**ORDERED** that Plaintiff's Motion to Approve his Application for Pre-Approval of *Pro Bono* Services [ECF No. 194] is DENIED; and it is further

**ORDERED** that the Clerk is directed to terminate ECF No. 194.

HON. JUSTIN T. QUINN
United States Magistrate Judge

--terminates ECF No. 194

---

[6] Also not at issue here, contrary to Plaintiff's position, is whether the Court is directing Plaintiff to find a new expert. *See* Mov. Br. at 25-26. This decision does no such thing; nor did it instruct Plaintiff to retain his expert in the first instance. The Opinion also does nothing to disturb the Court's previous approval of $37,500.00 for the limited purpose of engaging the expert in preparation for the depositions of defense witnesses (ECF No. 194-6). *Id.* at 26. These are concerns of Plaintiff's own creation that are unsupported by the record.

15