NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ANTONIO JONES,

      Plaintiff,

      v.

NJ DOC CENTRAL TRANSPORTATION et al.,

      Defendants.

Civil Action No. 18-1454 (RK) (JTQ)

**MEMORANDUM OPINION**

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon Plaintiff Antonio Jones's ("Plaintiff") Appeal, (ECF No. 198), of the April 24, 2025 Memorandum Opinion and Order of the Honorable Justin T. Quinn, U.S.M.J., ("Judge Quinn's Opinion," or "Opinion," ECF No. 197). Defendant Abu Ahsan, M.D. ("Defendant") opposed, (ECF No. 199), and Plaintiff replied, (ECF No. 200).[1] The Court has carefully considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Appeal is **DENIED**.

## I.    BACKGROUND[2]

    Plaintiff is a state prisoner represented by Court-appointed *pro bono* counsel in this civil rights action relating to medical treatment he received while an inmate. (Opinion at 2; *see also* ECF No. 14.) After over five years of litigation, Plaintiff's sole remaining claim is an Eighth

---

[1] This matter was transferred to the undersigned on January 5, 2026. (ECF No. 205.)

[2] The Court adopts in full Judge Quinn's recitation of the relevant background and recites the following facts solely to provide context for this Court's adjudication of the instant appeal.

Amendment deliberate indifference claim against Defendant concerning medical care he provided to Plaintiff for a pituitary tumor. (Opinion at 2.)

Plaintiff sought to retain a neurosurgeon to serve as an expert. (*Id.* at 3.) On July 6, 2022, Plaintiff filed an application for pre-approval of *pro bono* services in the amount of $126,500.00 from this District's Attorney's Admission Fee Account (the "Fund,") an account that provides funding for, among other things, a high volume of *pro bono* cases filed in this District. (*Id.* at 1, 3; ECF No. 194-3.[3]) According to Plaintiff's application, the proposed expert's rates consisted of an hourly rate of $1,500 and a daily testimony rate of $16,000. Plaintiff's application also included an itemized cost estimate, reproduced below:

| Task | Hours | Cost |
|---|---|---|
| Review Documents, Including Plaintiff's Deposition | 20 | $30,000 |
| Assist with Preparation for Depositions of Defendants | 5 | $7,500 |
| Draft Expert Report | 10 | $15,000 |
| Review Defendants' Expert Report | 3 | $4,500 |
| Deposition Preparation | 10 | $15,000 |
| Deposition Testimony | 1 Day | $16,000 |
| Assist with Preparation for Deposition of Defendants' Expert | 5 | $7,500 |
| Trial Preparation | 10 | $15,000 |
| Trial Testimony | 1 Day | $16,000 |
| **Total** | | $126,500 |

(ECF No. 194-3 at 2.)

On September 12, 2022, the Honorable Douglas E. Arpert, U.S.M.J. (ret.) granted Plaintiff's application in part. (ECF No. 194-6 at 2.) Judge Arpert approved an amount of $37,500.00 so that Plaintiff could engage his expert "in preparation for the deposition(s) of [D]efendants' witnesses,"[4] and "deferred" the rest of Plaintiff's requested amount "pending further

---

[3] The Court cites to Plaintiff's application by the PDF page number as it appears in ECF.

[4] By handwritten notation on Plaintiff's application, Judge Arpert grouped together the first two rows of Plaintiff's cost estimate, i.e., "Review Documents, Including Plaintiff's Deposition," at an estimate of $30,000 and "Assist with Preparation for Depositions of Defendants" at an estimate of $7,500, which, together, make up the $37,500 that he approved as part of Plaintiff's application. (ECF No. 194-6 at 2–3.)

consideration." (*Id.*) As Plaintiff would later confirm, of the $37,500 approved, Plaintiff spent a total of $25,950 of Fund monies in connection with his expert. (ECF No. 198-1 at 7.)

Following an extended period of litigation,[5] the denial of Defendant's motion for summary judgment, and unsuccessful attempts to settle the matter, the Court directed the parties to proceed with expert discovery and begin trial preparation. (Opinion at 4.) On October 16, 2024, Plaintiff submitted via email another application for pre-approval of *pro bono* services (the "operative application") requesting approval of the balance sought in his first application, which was $89,000. (ECF No. 198-1 at 8; ECF No. 194-8 at 4.) On October 18, 2024, Judge Quinn advised Plaintiff's counsel that $89,000 exceeded the amount typically requested from the Fund and that Plaintiff's expert's hourly rate "exceeds what the Clerk's Office typically sees in *pro bono* cases." (ECF No. 194-8 at 3–4.) In writing, Judge Quinn requested Plaintiff's counsel "to discuss a cost reduction with the expert, reminding him that 'this matter involves a *pro bono* appointment for which Appendix H encourages either free or reduced costs for . . . experts.'" (Opinion at 4 (alteration in original) (citing ECF No. 194-8 at 3).)

Plaintiff's counsel responded on October 25, 2024 and advised the Court that the expert agreed to "reduce the hourly rate by $100.00 (from $1,500.00 to $1,400.00), the trial testimony daily rate from $16,000.00 to $15,600.00, and to charge an hourly rate of $1,900.00 for deposition testimony rather than a daily rate," which resulted in a revised total of $76,400.00. (*Id.*) There is nothing in the record that indicates that Plaintiff attempted to retain or even consult with any other potential neurosurgeons who might serve as Plaintiff's expert, or that any comparables were obtained and produced demonstrating the reasonableness of Plaintiff's expert's proposed rates.

---

[5] The Court notes that this matter was assigned to Judge Quinn on May 31, 2024. (*See* Dkt. Entry dated May 31, 2024.)

3

Moreover, notwithstanding the modest proposed reduction of the expert's rates, Judge Quinn's concerns remained unabated, and he thereafter conferenced with the parties and directed them to confer with their respective clients and each other to discuss potential alternatives to Plaintiff's position regarding his sought expert. (*Id.* at 5.) The parties failed to reach an agreement, and at Judge Quinn's request, briefed the issue before him. (*See* ECF Nos. 193–96.)

On April 24, 2025, Judge Quinn denied the operative application on two discrete grounds: 1) that the pre-approval amount was not "reasonable and necessary" in contravention to Appendix H and the Application for Pre-Approval of *Pro Bono* Services; and 2) that it implicated due process concerns[6] as such an amount "would tilt the scales of justice in such a way that the appearance and reality of fairness would be illusory." (*See* Opinion at 7–14; *see also id.* at 7 ("Here, the Court concludes that Plaintiff's request plainly crosses that line triggering serious due process issues. And even if there were no due process concerns, Plaintiff's Application would still fail because the request is neither fair nor reasonable.").) In ruling that the Plaintiff's requested amount was not "reasonable and necessary," Judge Quinn's Opinion provided in pertinent part as follows:

> This Fund is not a bottomless coffer to draw from, however; it is an account of limited resources that provides funding for the many *pro bono* assignments in this District, among other things. And that is why applications over a certain monetary threshold require judicial pre-approval. The instant Application falls into this category, as it seeks pre-approval of $76,400.00, a staggering amount that appears unprecedented not only in this District but nationwide. To receive the Court's pre-approval, the requesting party must demonstrate that the services and expenses requested are "reasonable and necessary." Plaintiff's Application fails to make this showing.

(*Id.* at 1.) Accordingly, Judge Quinn denied Plaintiff's Motion to Approve his operative application, and this appeal followed.

---

[6] For reasons explained more fully below, the Court need not analyze Judge Quinn's alternative due process rationale.

## II.    LEGAL STANDARD

"A Magistrate Judge is accorded wide discretion in addressing non-dispositive motions." *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004). A magistrate judge's ruling on a non-dispositive matter may only be set aside if the "order is 'clearly erroneous or contrary to law.'" *Id.* (quoting 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1113 (3d Cir. 1986)). "A finding is clearly erroneous only 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998) (quoting *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1035, 1037 (D.N.J. 1995)); *see United States v. U.S. Gypsum Co.*, 333 U.S. 365, 395 (1948). "However, '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, No. 19-2921, 2022 WL 3211421, at *3 (D.N.J. Aug. 9, 2022) (quoting *United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014)).

For a decision to be contrary to law, "the Court must find the magistrate judge misapplied or misinterpreted the applicable law." *Hooker v. Novo Nordisk Inc.*, No. 16-4562, 2019 WL 2521749, at *2 (D.N.J. June 19, 2019) (citing *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998)). The party appealing the decision bears the burden of showing it is clearly erroneous or contrary to law. *Travelers Indemn. Co. v. Dammann & Co.*, 592 F. Supp. 2d 752, 758–59 (D.N.J. 2008), *aff'd*, 594 F.3d 238 (3d Cir. 2010).

"Abuse of discretion encompasses clearly erroneous findings of fact and misapplications of law." *United States v. Walls*, 290 F. App'x 454, 455 (3d Cir. 2008) (quoting *United States v. Williams*, 443 F.3d 35, 46 (2d Cir. 2006), *partially abrogated on other grounds, Esteras v. United*

*States*, 606 U.S. 185, 190 n.1 (2025)). Abuse of discretion is found "when the judicial action is arbitrary, fanciful or unreasonable," or in other words, "only where no reasonable [person] would take the view adopted by the . . . court." *Fagan v. Fischer*, No. 14-7013, 2018 WL 2859541, at \*3 (D.N.J. June 11, 2018) (quoting *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 115 (3d Cir. 1976)). When the underlying ruling relates to a non-dispositive matter, such as a discovery motion, the magistrate judge's "ruling is entitled to great deference and is reviewable only for abuse of discretion." *Frank v. County of Hudson*, 924 F. Supp. 620, 623 (D.N.J. 1996); *see also Cordero-Rezabala v. United States*, No. 24-4010, 2024 WL 1673366, at \*4 (D.N.J. Apr. 18, 2024) ("The decision of the magistrate judge is reviewed for abuse of discretion, and must be upheld 'if there is any competent evidence in the record to support it.'" (quoting *Sidali v. I.N.S.*, 107 F.3d 191, 199 (3d Cir. 1997))).

## III.    DISCUSSION

On appeal, Plaintiff argues that Judge Quinn's Opinion was both clearly erroneous and contrary to law because his due process analysis "calls into question the legality of this Court's *pro bono* program" and "implie[s] that Appendix H of the Court's Local Civil Rules . . . is unconstitutional as applied to anything more than *de minimis* reimbursements." (ECF No. 198-1 at 2, 20.) He further argues that Appendix H imposes a mandatory obligation upon the Court to grant reimbursement of fee requests to the extent funds are available, and that Judge Quinn erred in finding to the contrary. (*Id.* at 11–12.) Finally, Plaintiff surmises that Judge Quinn's due process analysis "likely influenced" his consideration of Appendix H's reasonableness inquiry, and that "there is reason to believe that [Judge Quinn] would have assessed the [operative] Application differently had he not incorrectly thought due process precedent weighed against the request." (*Id.*

6

at 20.) According to Plaintiff, his requested fees were reasonable, necessary, and fair, and thus required court approval. (*See id.* at 20–26.)

The Court finds no basis to reverse Judge Quinn's Opinion denying Plaintiff's application for pre-approval of *pro bono* services. It is evident from Judge Quinn's thoughtful and cogent opinion that he carefully evaluated Plaintiff's operative application and reasonably exercised his discretion in denying same. Because the Court finds that Judge Quinn's denial was based on two independently sufficient grounds and plainly affirmable on reasonableness grounds alone, the Court need not address Judge Quinn's alternative holding on due process grounds.[7] *See, e.g., United States v. Otero*, 502 F.3d 331, 334 n.1 (3d Cir. 2007) ("We do not reach constitutional issues unnecessarily."); *Mills v. Rogers*, 457 U.S. 291, 305 (1982) ("It is this Court's settled policy to avoid unnecessary decisions of constitutional issues.").

At the outset, the Court notes that Judge Quinn approached Plaintiff's operative application deliberatively, and it is clear to the Court that every aspect of Plaintiff's pre-approval request received Judge Quinn's rigorous and thoughtful consideration. Rather than summarily deny the operative application outright, Judge Quinn provided Plaintiff with notice and repeated opportunities to address the court's concerns as to the excessive amount of expert fees sought, and for potential alternatives. (*See* Opinion at 4, ECF No. 194-8.) However, rather than attain a significant reduction for his proposed expert, or obtain an alternative, Plaintiff simply doubled-down and failed to substantively address Judge Quinn's bona fide concerns in any meaningful

---

[7] As Judge Quinn clarified, "even if there were no due process concerns, Plaintiff's [operative] Application would still fail because the request is neither fair nor reasonable." (Opinion at 7); *cf. Tompkins v. Hackett*, 841 F. App'x 367, 369 n.2 (3d Cir. 2021) (per curiam) (noting that the Court "need not address the District Court's alternative grounds for dismissal" when affirming on a separate basis); *M&T Bank v. Arsenis*, No. 23-2324, 2024 WL 1171081, at *1 n.1 (3d Cir. Mar. 19, 2024) (per curiam) (similar); *Maybin v. Slobodian*, 739 F. App'x 161, 165 n.4 (3d Cir. 2018) (noting that as an appellate court, it "may affirm . . . on any ground supported by the record" (alteration in original) (quoting *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)).

way. In fact, as stated previously herein, there is nothing in the record by way of comparable expert fees in *pro bono* cases to indicate that Plaintiff's request is in any way reasonable.

The sought amount of Plaintiff's expert was unreasonable. As Judge Quinn noted, Plaintiff's reduced request seeking pre-approval of $76,400.00 in expert fees is "unprecedented in this District," a finding that is supported by Plaintiff's own brief. (*See* Opinion at 13.) Plaintiff cites to a variety of cases within this District where the court pre-approved disbursements from the Fund for expert fees. (*See* ECF No. 198-1 at 20–21). However, Plaintiff's own cited cases make clear that the highest preapproval amount was for $5,700, an amount that constitutes approximately 1/14 of the $76,400.00 he seeks here. (*See id.* at 14 (citing *Szemple v. Univ. of Med. & Dentistry of N.J.*, No. 10-5445, ECF No. 55 (D.N.J. May 23, 2014)); *see also* Opinion at 9 ("Plaintiff fails to even acknowledge that the body of Third Circuit law that permits expert fee reimbursement has limited such reimbursement to no more than $5,700.00.").)

The other in-district cases cited by Plaintiff only make Plaintiff's request more glaringly an outlier. (*See* ECF No. 198-1 at 14 (citing *Rolkiewicz v. Corr. Med. Servs. Inc.*, No. 05-2943, ECF No. 62 (D.N.J. Jul. 31, 2006) (approving payment of $3,000 for plaintiff's medical expert from the Fund); *Oliver v. Main*, No. 12-3757, ECF No. 94 (D.N.J. May 26, 2015) (approving $1,500 from the Fund for an independent medical examination by plaintiff's neurological expert); *Travelers Indem. Co. v. Barnickel Enters., Inc.*, No. 09-5068, ECF No. 32 (D.N.J. Mar. 25, 2011) (limiting Plaintiff's pre-approval of funds to $5,000 "absent further order of the Court."); *Colston v. Corr. Med. Servs.*, No. 04-3209, ECF No. 52 (D.N.J. Nov. 14, 2008) (approving $1,000 for payment of plaintiff's medical expert fees from the Fund)).

Further, the out-of-district cases Plaintiff cites to in support of his operative application only lend additional support for Judge Quinn's ruling; namely, that the total reimbursement

8

amounts approved in these cases did not exceed $17,933.43, and in that case, only a small fraction of that amount was for expert fees. (*See* ECF No. 198-1 at 21–22; *see also* Opinion at 9 ("only a small portion" of the $17,933.43 disbursement was applied to expert fees (citing *Groover v. U.S. Corr., LLC*, No. 15-61902 (S.D. Fla. June 21, 2019))).) In fact, while Judge Arpert's initial decision is not before the Court and the Court is certainly not second guessing it, the Court notes that Plaintiff's own cited cases indicate that Judge Arpert's approval of $37,500 was itself an outlier favorable to Plaintiff. In light of this, the Court also agrees with Judge Quinn that Plaintiff's reduction of his expert's hourly rate by a mere $100.00 and trial testimony rate by $400.00 does nothing to move the needle from unreasonable to reasonable. (*See* Opinion at 13 (finding that Plaintiff's "*de minim[i]s* reduction" in expert fees to be "not compelling.").)

Additionally, the Court agrees with Judge Quinn that Appendix H, Section 8 does not impose a mandatory obligation upon the Court to approve any and all fee requests. (*See* Opinion at 8.) Such a limited reading of this provision ignores that Plaintiff must first show that the requested reimbursement is "reasonable and necessary." (*See* ECF No. 194-3 at 4.) The logical corollary of this, of course, is that reimbursement requests that are unreasonable and unnecessary should not be granted. Additionally, As Judge Quinn noted, this District's Application for Pre-Approval of *Pro Bono* Services states that appointed attorneys "are encouraged to seek *free or reduced costs* for depositions, experts and other services," L. Civ. R. App'x H. § 8(d) (emphasis added), and that the Court does in fact retain a discretion to grant or deny such requests, *see United States District Court for the District of New Jersey Procedures for Reimbursing Pro Bono Attorneys*, U.S. Dist. Ct. Dist. of N.J., ¶ 2, https://www.njd.uscourts.gov/sites/njd/files/APPH.pdf (last visited Feb. 19, 2026) [hereinafter Reimbursement Procedures] (noting that "*if* approved," a *pro bono* attorney may proceed in submitting a reimbursement voucher to the Court (emphasis

added)). To suggest otherwise would render the entire pre-approval process superfluous; if *pro bono* attorneys were permitted to withdraw funds at unbounded, exorbitant amounts limited only by the amount remaining in the Fund itself,[8] disbursements would be issued to those who raced to the courthouse first, depleting the available funds for other *pro bono* litigants, resulting in a miscarriage of justice.[9] Plaintiff's arguments to the contrary are unconvincing.

Further, Plaintiff's mere dissatisfaction with Judge Quinn's denial of his operative application does not render the denial an abuse of discretion. The Court finds that Judge Quinn's denial of Plaintiff's operative application seeking pre-approval of $76,400.00 for its expert, *after* having already been reimbursed in the amount of $25,950 in connection with Plaintiff's expert, for what would amount to a total of in excess of $100,000 in disbursements from the Fund, was a reasonable, and frankly necessary, exercise of discretion. Such a decision is entitled to great deference by this Court. *See Frank*, 924 F. Supp. at 623. Relatedly, any assumption that Judge Arpert's deferral on the balance of Plaintiff's prior application served as a future "guarantee" to

---

[8] It is obvious and uncontested that the Fund's coffers are not unlimited, and procedures have been implemented for the purpose of maintaining the Fund's solvency. *See* Reimbursement Procedures ¶ 4(b) ("So that the Fund may remain solvent and available to assist *pro bono* attorneys, any application for attorney's fees and/or costs on behalf of a party who has received reimbursement of expenses from the Fund shall include a request for assessment of any expense for which disbursement from the Fund has been made."). This adds further support for Judge Quinn's holding that approvals are not "mandatory" and demonstrates the need for the additional requirement that attorneys certify that their requested fees are reasonable and necessary.

[9] The Court agrees that the Fund is not a bottomless pit from which Plaintiff may usurp for his own benefit alone. Approving Plaintiff's exorbitant request would drain the Fund for other current and would-be litigants litigating their cases with the assistance of appointed *pro bono* counsel. Although not required for the Court's analysis, the Court notes that a search of CM/ECF reveals that, as of the close of business on February 23, 2026, there are currently approximately sixty-five prisoner litigation cases with appointed *pro bono* counsel pending in this District. Moreover, the Court notes that there is currently a total pool of 428 *pro se* prisoner cases in this District, each of which could be eligible for *pro bono* representation and money from the fund. *See Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket."); *SigmaPharm, Inc. v. Mutual Pharm. Co.*, 772 F. Supp. 2d 660, 667 n.41 (E.D. Pa. 2011) ("The Court may take judicial notice of other court proceedings."), *aff'd*, 454 F. App'x 64 (3d Cir. 2011). Requests for disbursements must take into consideration the many other litigants that are entitled to withdraw from the Fund.

10

the full balance of the requested amount was an assumption made at Plaintiff's "own peril," untethered to the record and without support. (*See* Opinion at 12–13.) Judge Quinn's decision was supported by competent evidence in the record, and accordingly, it must be upheld.[10] *See Cordero-Rezabala*, 2024 WL 1673366, at *4.

Finally, Plaintiff argues that Judge Quinn's Opinion "should be set aside and [Plaintiff's] [operative] application approved in the requested amount or in a lesser amount that would still afford [Plaintiff] a meaningful opportunity to obtain expert assistance." (ECF No. 198-1 at 3.) The Court declines Plaintiff's invitation, as it is not required under the Local Rules to identify a lesser amount, and further notes that the burden rests upon *Plaintiff* to certify that the expenses sought are "reasonable and necessary." (*See* ECF No. 194-3 at 4 (directing *pro bono* Counsel to "certify" and "explain[] why the expenses . . . are reasonable and necessary")); Reimbursement Procedures ¶ 1 (noting that *pro bono* counsel may apply for reimbursement of expenses and that "[n]o disbursement shall be made unless it is intended to pay for reasonable and necessary litigation expenses"). Judge Quinn's Opinion was limited to Plaintiff's operative application for pre-approval for expert fees in the amount of $76,400.00, which Judge Quinn held (and this Court agrees) was neither fair, reasonable, nor necessary. (*See* Opinion at 15.) Nothing in Judge Quinn's

---

[10] This Court is well-aware that "under the clearly erroneous standard, 'a district court may not consider any evidence which was not presented to the magistrate judge.'" *Celgene Corp. v. Natco Pharma Ltd.*, No. 10-5197, 2015 WL 4138982, at *2 (D.N.J. July 9, 2015) (quoting *Lithuanian Com. Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 213 (D.N.J. 1997)). While the Court affirms for the reasons set forth in Judge Quinn's Opinion, the Court also notes that Judge Quinn's denial of Plaintiff's operative application is further supported by the limits placed on other Funds within the Third Circuit created to reimburse *pro bono* counsel for costs incurred during the course of their representation. *See Public Interest Litigation Fund Guidelines*, U.S. Dist. Ct. for the E. Dist. of Pa., https://www.paed.uscourts.gov/sites/paed/files/documents/frmreimb.pdf (last visited Feb. 18, 2026); (limiting reimbursement to $4,000); *Pro Bono Attorney Program*, U.S. Dist. Ct. for the Middle Dist. of Pa., https://www.pamd.uscourts.gov/pro-bono-attorney-program-0 (limiting reimbursements to $1,500); *Federal Civil Panel*, U.S. Dist. Ct. for the Dist. of Del., https://www.ded.uscourts.gov/federal-civil-panel (last visited Feb. 18, 2026) (limiting reimbursement to "generally up to $10,000").

Opinion or this Court's decision precludes Plaintiff's counsel from obtaining an expert or prevents him from submitting another application for pre-approval of expert expenses, if he so chooses. (*See id.* at n.6 (noting that "contrary to Plaintiff's position," the Court was not "direct[ing] Plaintiff to find a new expert . . . instruct[ing] Plaintiff to retain his expert in the first instance," or "disturb[ing] the Court's previous approval of $37,500.00.").) Thus, the Court declines to order the requested relief.

For the reasons set forth above, the Court would affirm Judge Quinn's holding even on *de novo* review. Moreover, there is certainly nothing to suggest that Judge Quinn abused his discretion, made a clearly erroneous finding of fact, or otherwise committed reversable error. *See Walls*, 290 F. App'x at 455. Consistent with Judge Quinn, on this record, it is clear that the sought amount is neither fair nor reasonable. Accordingly, Plaintiff's appeal is **DENIED**.

## CONCLUSION

For the foregoing reasons, Plaintiff's Appeal, (ECF No. 198), is **DENIED** and Judge Quinn's Opinion, (ECF. No. 197), is **AFFIRMED**. An appropriate Order follows.

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: February 24, 2026

13